UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:95-cr-105-MOC-1

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>vs. )<br>)<br>RYAN O'NEILL LITTLE, )<br>)<br>Defendant. )<br>_____) | **ORDER** |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 157). The Government has responded in opposition to the motion.

**I.**  **BACKGROUND**

On April 3, 1996, Defendant was convicted by a jury in the Western District of North Carolina of the following offenses:

- Conspiracy to Distribute Cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 851;
- Murder in Aid of Racketeering in violation of 18 U.S.C. §§ 1959(a)(1) and 2;
- Possession of a Firearm During and Relation to a Crime of Violence in violation of 18 U.S.C. §§ 942(c) and 2;
- Possession of a Firearm During and Relation to a Drug Trafficking Crime in violation of §§ 942(c) and 2; and
- Possession of Ammunition by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1).

(Jury Verdict, Doc. No. 64).

Defendant was known to his partners in crime as the "robbery boy" — meaning "someone who robs drug dealers." (Pre-Sentence Report ("PSR") Doc. No. 118 at ¶ 20). According to testimony at Defendant's trial, between October 22 and 24, 1993, Defendant and

-1-

two of his cohorts went "on tour"— which involved robbing other drug dealers while traveling through different cities in North Carolina. (Id. at 21). By October 26, 1993, Defendant had returned to Charlotte where he entered the residence of another member of his criminal enterprise and robbed him of money, cocaine, marijuana, guns, jewelry, and other items. (Id. at ¶ 22). Two days later, on October 28, 1993, Defendant and Titus Tyrone Murphy (Mr. Murphy) got into an argument over a bag of cocaine that belonged to Defendant. (Id. at 25). Witnesses to the argument described Mr. Murphy striking Defendant in the face and running. (Id.). Defendant chased Mr. Murphy and fatally shot him multiple times in the back with a .32 caliber revolver. (Id.). Defendant told his coconspirators that he killed Mr. Murphy because he tried to take Defendant's cocaine. (Id. at ¶ 26). Defendant disposed of the gun he used to kill Mr. Murphy in a pond in Anson County, North Carolina. (Id. at ¶ 27). The PSR further details two incidents in which Defendant attempted to influence the testimony of prospective witnesses in his trial— resulting in a two-level enhancement for obstruction of justice under the United States Sentencing Guidelines (USSG). (Id. at ¶¶ 29-31).

Defendant, who was 19 years old at the time of the instant offenses, had already amassed a violent criminal record, including multiple juvenile adjudications for weapons violations. (Id. at ¶¶ 67-71). As an adult, Defendant was convicted of assault, injury to personal property, and possession of cocaine while carrying a concealed handgun. (Id. at ¶¶ 72-75). Defendant was on supervised probation at the time he murdered Mr. Murphy. (Id. at ¶ 77). This and the other offenses of which Defendant was convicted at trial occurred less than two years following his release from juvenile detention. (Id. at ¶ 78). Defendant was in Criminal History Category IV

when he was sentenced by U.S. District Judge Richard Vorhees on August 15, 1996. (Id. at 79). Judge Vorhees sentenced Defendant to life imprisonment followed by 25 years imprisonment. (Judgement, Doc. No. 75).

Defendant's conviction and sentence was affirmed by the Fourth Circuit Court of Appeals. (Doc. Nos. 79-80). Defendant's subsequent motion under 18 U.S.C. § 2255 was denied by this Court on July 20, 2001, which denial was also affirmed by the Fourth Circuit. (Doc. Nos. 89-90, 92-93). Defendant's Motion to Reduce his sentence under the Crack Cocaine Amendment, 18 U.S.C. 3582, was also denied by this Court, which denial was affirmed by the Fourth Circuit. (Doc. Nos. 104, 108-109, 119-125). Various pro se motions filed between 2012 and the present were denied by this Court. (Doc. Nos. 131-139). Defendant's case was most recently reviewed for a sentence reduction under the United States Sentencing Commission's (USSC's) retroactive USSG Amendment 782 for cocaine offenses, which reduction was denied on February 5, 2016. (Doc. No. 147).

Defendant was remanded to the custody of the Bureau of Prisons (BOP) on or about February 20, 1997. (Doc. No. 77). As of this filing, Defendant has served approximately 27 years and four months of his sentence, including pre-trial credit. During his time in BOP, Defendant has been disciplined on more than 20 occasions, including for serious infractions such as assault, possession of a dangerous weapons, threatening bodily harm, disruptive behavior, fighting, extortion, interfering with prison staff, lying, and disobeying orders. See Inmate Disciplinary Record, PD 15-03-04 (March 4, 2021). On the positive side, Defendant's Release Motion includes documentation of Defendant's attendance of various education courses while in prison.

-3-

Defendant's Release Motion does not specifically cite any medical condition that would place Defendant at an increased risk of severe illness should he contract the COVID-19 virus, but briefly mentions his age (46), obesity, mental state (anxiety and depression), high blood pressure, "border-line" diabetes, and sciatic nerve disorder as possible risk factors. (Doc. No. 157 at 4). The only possible riskfactor documented by Defendant's BOP medical records is obesity. Obesity (BMI greater than 30) is listed by the Center for Disease Control (CDC) as posing an increased risk for severe illness from COVID-19. CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed on Mar. 30, 2021). While Defendant's Medical records detail diagnoses and treatment for anxiety and depression, they are not COVID risk factors according to the CDC. The other medical conditions mentioned by Defendant's Release Motion are not substantiated in his medical records. Defendant's BOP medical records show that he was tested for COVID on multiple occasions—the last time on January 25, 2021—and was found to be negative.

BOP reports that as of March 30, 2021, United States Penitentiary (USP) Canaan has one inmate and six staff members with confirmed active cases of COVID. See BOP, *COVID-19 Cases*, available at https://www.bop.gov/coronavirus (last accessed Mar. 30, 2021). Over 300 inmates and 60 staff members at USP Canaan have recovered from the virus and none have died. Id. Moreover, BOP reports that 338 inmates and 152 staff members at USP Canaan have received full inoculations of the COVID vaccine— meaning two doses. BOP, *COVID-19 Vaccination Implementation*, available at https://www.bop.gov/coronavirus (last accessed Mar.

-4-

30, 2021). There are approximately 1,181 inmates at USP Canaan. See BOP, USP Canaan, available at http://www.bop.gov/locations/caa (last accessed Mar. 30, 2021).

If released, Defendant states his daughter and brothers "are ready to welcome him into their home and provide the support he needs to re-enter society and be a productive citizen. (Doc. No. 157 at 2). Defendant does not state where his daughter and brother live or their circumstances.

## II. DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[1] As relevant here, the non-binding

---

[1] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate

-5-

policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

---

release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

-6-

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant's request for a sentence reduction will be denied because he has failed to show

-7-

extraordinary and compelling circumstances warranting his early release from prison. As explained above, under the relevant provision of Section 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Although the Court is not bound by the USSC's policy statement governing compassionate release motions filed by the BOP, the policy, which remains "helpful guidance," defines "extraordinary and compelling reasons" to include, as relevant here, any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13, cmt. n.1(A); McCoy, 981 F.3d at 282 n.7.

Many of the arguments in Defendant's Release Motion have nothing to do with COVID and are a reiteration of his prior motions regarding the USSG and perceived sentencing disparities that he believes should be remedied under the First Step Act. Defendant's Release Motion at 6-9. Obesity is the only medical condition claimed by Defendant that is recognized by the CDC as a heightened COVID-19 risk factor. Nevertheless, obesity is clearly within the Defendant's control. In fact, Defendant's medical records show that he has engaged in hunger strikes prior to the pandemic in 2013, 2015, 2016, and 2017—demonstrating that he can lose weight when he chooses to do so. Therefore, Defendant's circumstances do not rise to the level of "extraordinary or compelling." See, e.g., United States v. Hazam, No. 18-CR-30029, 2020 WL 3265349 (C.D. Ill. June 17, 2020) (prediabetes and latent tuberculosis are not risk factors); United States v. Ram, No. 5:13-CR-50045, 2020 WL 3100837 (W.D. Ark. June 11, 2020) (defendant's conditions of prediabetes, back pain, high blood pressure, high cholesterol, and

-8-

glaucoma do not rise to the level of CDC risk factors); United States v. Mungin, No. 97-CR-1105(LAP), 2020 WL 2847927, at *3 (S.D.N.Y. June 2, 2020) (prediabetes is not a risk factor).

For these reasons, Defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under Section 3582(c).

Even if this Court believes that "extraordinary and compelling reasons" exist to support release based on COVID-19 and Defendant's health issues, the Court must also consider the Section 3553(a) factors, as "applicable," as part of its analysis in determining release. See 18 U.S.C. § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020). The Section 3553(a) factors strongly disfavor a sentence reduction in this case.

Defendant was convicted of murder in aid of racketeering. He killed a man over a cocaine deal. (See PSR, Doc. 118 at ¶ 25). Compassionate release in this case would result in a sentence that no longer reflects the seriousness of Defendant's crime or his history and characteristics, and one that does not serve the federal interests of specific or general deterrence and of protecting the public from further crimes. Even though only 19 years old when he shot Mr. Murphy to death, Defendant had already racked up multiple weapons, assault, and drug convictions. (Id. at ¶¶ 67-75). Defendant was also on probation at the time of his federal offense. (Id.). Therefore, specific deterrence and protection of the public should be paramount considerations.

Like his medical conditions, Defendant's claim of "extraordinary rehabilitation" should be carefully examined. Defendant argues he has demonstrated "extraordinary rehabilitation" while in prison, but his BOP disciplinary record states otherwise. (Doc. No. 157 at 12-13). As noted above, Defendant has a long list of serious infractions that include fighting and possession

-9-

Case 3:95-cr-00105-MOC    Document 162    Filed 04/13/21    Page 9 of 10

of a dangerous weapon. Defendant says that he accepts "full responsibility for his criminal actions" and asks for a second chance to be a father and grandfather. (Id. at 15). However, Defendant does not express remorse for taking Mr. Murphy's life. Because of Defendant's violent action, Mr. Murphy's four children were left to be raised by their grandmother. (PSR Doc. No. 118 at ¶ 28). Instead, Defendant writes that his sentence is "unjust" and "disparate" without mentioning the life he wrongly took or the violence that preceded this irrevocable act. Releasing Defendant from a life plus 25 years prison sentence would be an injustice to Defendant's murder victim and his family, lessen the impact of deterrence provided by the significant sentence originally imposed by this Court, and, most importantly, threaten the community with further violence by Defendant. The original sentence imposed by the Court remains a just sentence in this matter.

Having thus considered Defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 157), is **DENIED**.

Signed: April 13, 2021

Max O. Cogburn Jr.
United States District Judge

-10-